IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

RAYMOND L. KYSAR, PATSY SUE KYSAR,
and the KYSAR FAMILY TRUST,

        Plaintiffs,

vs                                    No. CIV 00-958 LFG/KBM

BP AMERICA  PRODUCTION COMPANY,

        Defendant.

## ORDER WITHDRAWING PREVIOUS ORDER AND SUBSTITUTING THIS MEMORANDUM OPINION AND ORDER GRANTING DEFENDANT'S MOTION FOR PRELIMINARY INJUNCTION

On November 16, 2004, this Court entered a Memorandum Opinion and Order [Doc. 90] Granting Defendant's Motion for Preliminary Injunction.  The Court now withdraws that Order and substitutes the following Memorandum Opinion and Order, modifying the Discussion portion of the earlier ruling, in light of the recent decision issued by the United States Court of Appeals for the Tenth Circuit in O Centro Espirita Beneficiente Uniao Do Vegetal v. Ashcroft, No. 02-2323, 2004 WL 2569531 (10th Cir. Nov. 12, 2004), which clarified the standards for issuing a preliminary injunction in this Circuit.

THIS MATTER comes before the Court on the Motion for Preliminary Injunction [Doc. 72], filed herein by Defendant BP America Production Company ("BP")[1].  Plaintiffs ("the Kysars") filed

---

[1]Defendant was formerly known as Amoco Production Company and changed its corporate name as the result of a merger while this litigation was pending.  See, Motion to Amend Case Caption, Doc. 68. For the sake of simplicity, the Court will refer to Defendant as "BP," even when describing activities undertaken by Defendant prior to the name change.   All references in the record to "Amoco" or "Amoco Production Company," as quoted herein, refer as well to BP America Production Company.

a response in opposition, BP submitted a reply, and the motion is fully briefed.  The court scheduled

a hearing on this motion, which was later vacated at the request of counsel for BP due to a scheduling

conflict.  BP having advised the Court that resolution of the motion without a hearing would be

appropriate, and the Kysars having raised no opposition, the Court will decide the motion on the

briefs.  For the reasons given below, the Court finds that BP's motion is well taken and a preliminary

injunction will be granted, pending resolution of this ligation.

### Factual and Procedural Background

This case involves a dispute over access to a gas well.  The Kysars assert a cause of action

for trespass, alleging that BP is unlawfully using roads across Kysar property in order to operate and

service a gas well drilled by BP on Bureau of Land Management ("BLM") land adjacent to the

Kysars' property.

The Kysars own the surface rights to a parcel of land along the Animas River in San Juan

County, New Mexico.  They acquired some of this land from Maude Keys ("Keys").  In 1948, when

she still owned the property, Keys leased to BP's predecessor-in-interest the oil and gas rights

underlying her fee lands.  The lease was later amended to allow the mineral rights owner to pool and

unitize the leasehold estate with other lands or leases, thus creating a common drilling or production

unit.  In 1992, the property formerly owned by Keys, now owned by the Kysars, became subject to

a communitization agreement.  The agreement covers both the 37 acres owned by the Kysars as well

as a parcel of BLM land immediately adjacent to this 37-acre portion.  After communitization, BP

proposed to drill a gas well on the 37-acre parcel owned by the Kysars.  Because the Kysars objected

that a well in that location would interfere with their alfalfa farming operations, BP drilled the well

on the adjacent BLM land.

This well, called the Sullivan E-1 well, was completed in 1992.   Since that time, BP has accessed the well by means of roads running over the Kysars' property, including a 30-foot spur road leading onto BLM land from the already-existing road network on the Kysars' land.   BP contends that the Kysars gave the company permission to use the roads across Kysar land to access the Sullivan E-1 well; the Kysars dispute this.   BP operates other wells on Kysar property, and the parties do not dispute BP's right to access these other wells over the roads in question.   Other mineral companies also use these roads.   BP asserts that it grades and maintains the roads on Kysar property at its own expense, and the Kysars do not dispute this assertion.

In September 1999, prior to institution of this litigation, the parties entered into a tolling agreement under which they agreed to toll "any and all applicable statutes of limitation or other time bars as of August 15, 1999 for a period to end January 31, 2000."   On May 26, 2000, the Kysars filed their "Complaint for Trespass" against BP in state court, later removed to federal court.

In their complaint, the Kysars seek an injunction against further trespass, a declaratory judgment to the effect that BP has no right to cross their land to access the well in question, compensatory and punitive damages, and statutory damages pursuant to N.M.S.A. § 30-14-1.1(D) (which provides for civil damages for trespass to land).   The Kysars originally included a claim for treble damages and attorney fees under the New Mexico Unfair Practices Act, N.M.S.A. 1978, § 57-12-10.   Dismissal of this claim was affirmed by the Tenth Circuit.   Kysar v. Amoco Production Co., 379 F.3d 1150, 1156-57 (10th Cir. 2004).    In its answer, BP raised several affirmative defenses including, *inter alia,* statute of limitations; express or implied consent to entry; entry by necessity; and the equitable doctrines of laches, estoppel and waiver.

On October 30, 2001, this Court granted BP's Motion for Summary Judgment and dismissed

the action.   The Kysars appealed.   Meanwhile, in September 2002 the parties entered into a "Gathering Line Agreement" under which the Kysars granted BP the right to construct, operate, maintain, inspect and change the gathering line coming from the well, as well as "associated appurtenances."   In order to resolve the appeal, the Tenth Circuit certified to the New Mexico Supreme Court two questions of state law.

As a result of the state supreme court's ruling in response to this certification, Kysar v. Amoco Production Co., 135 N.M. 767, 93 P.3d 1272 (2004), the Tenth Circuit reversed this Court's ruling that BP had a legal right of access over the portion of the Kysars' land which was not included in the communitization agreement.   The Tenth Circuit noted, however, that "there are unresolved factual issues which prevent our resolving the statute of limitations issue, and we remand to the district court to make these determinations." Kysar v. Amoco Production Co., 379 F.3d 1150, 1157 (10th Cir. 2004).   In remanding the case, the Court of Appeals charged this Court with resolving the statute of limitations issue, determining whether the Kysars' claims "lie at all" and, if so, calculating damages, "tak[ing] into account the Kysars' request and Amoco's agreement not to locate the well on the Kysars' alfalfa field, but rather to use existing roads to other wells as far as possible." Id..

On August 17, 2004, the Kysars posted no-trespassing signs on their property, and they refuse now to allow BP access, without payment, to the Sullivan E-1 well by means of the roads crossing their lands.   After the posting, on August 20, a compressor on one of the lines leading from the well stopped functioning.   BP asked the Kysars to give them temporary access to repair the compressor, and the Kysars offered temporary access in exchange for "$5,000 plus immediate identification of a BP executive with real authority who would begin negotiating a settlement and long-term agreement." [Doc. 77, Ex. 1, at ¶ 3].

4

BP rejected the $5,000 offer and filed this Motion for Preliminary Injunction, seeking an order forcing the Kysars to allow BP to use the roads the access the well, contending that an operating gas well is dangerous to those in the vicinity and to the general public, if left unattended. The Kysars assert that, because the Motion raises safety issues, they offered to allow BP to come onto the land on a one-time basis for the purpose of shutting the well down entirely, in exchange for a token payment of $5.00. [Doc. 77, Ex. 1, at ¶¶ 5-6]. BP rejected this offer. BP states that it sent its employees across the Animas River by means of ropes and harnesses, to gain access to the well for purposes of temporarily ameliorating "the immediate looming problems." [Doc. 82, at 2]. BP continues to press for a preliminary injunction pending final resolution of the lawsuit.

## Discussion

The function of a preliminary injunction is to preserve the status quo pending a final determination of the rights of the parties. Lundgrin v. Claytor, 619 F.2d 61, 63 (10th Cir. 1980). It is an equitable remedy that invokes the sound discretion of the district court. McDonough v. Widnall, 891 F. Supp. 1439, 1447 (D. Colo. 1995). In issuing a preliminary injunction, a court is attempting to preserve the power to render a meaningful final decision on the merits. Tri-State Generation & Transmission Ass'n, Inc.  v. Shoshone River Power, Inc., 805 F.2d 351, 355 (10th Cir. 1986).

To obtain a preliminary injunction, the party requesting relief bears the burden of showing: (1) a substantial likelihood of prevailing on the merits; (2) irreparable harm unless the injunction is issued; (3) that the threatened injury outweighs any harm that the preliminary injunction may cause the opposing party; and (4) that the injunction, if issued, will not adversely affect the public interest. Resolution Trust Corp. v. Cruce, 972 F.2d 1195, 1198 (10th Cir. 1992).

In cases not falling within the "specifically disfavored" categories, the Tenth Circuit has

adopted a "modified requirement" as to the first element:

> If the movant has established the other three requirements for a preliminary injunction . . . , the movant may satisfy requirement (1) by showing that questions going to the merits are so serious, substantial, difficult, and doubtful as to make the issue ripe for litigation and deserving of more deliberate investigation.

Federal Lands Legal Consortium v. United States, 195 F.3d 1190, 1194-95 (10th Cir. 1999).

As discussed below, the Court finds that elements (2), (3), and (4) have been met in this case, and that the case does not fall within any of the "specifically disfavored" categories of preliminary injunction cases (see discussion under subhead A, below). The "modified requirement" with regard to element (1) is therefore applicable. As the Court also finds further that there remain "serious, substantial, difficult, or doubtful" issues in this litigation going to the merits which require more deliberate investigation, a preliminary injunction is therefore justified.

The Court by this ruling intends to maintain the status quo – that is, BP will have access to the Sullivan E-1 well by means of the roads over the Kysars' property in order to service the well and keep it producing – until the remaining issues have been finally resolved by further litigation or by settlement between the parties.

A. The Injunction Sought Does Not Fall Within the "Specifically Disfavored" Categories

In SCFC ILC, Inc. v. Visa USA, Inc., 936 F.2d 1096, 1099 (10th Cir. 1991), the Tenth Circuit held that the moving party must make a heightened showing when seeking an injunction falling within any of three "disfavored" categories: (1) if the preliminary injunction disturbs the status quo; (2) if the preliminary injunction is mandatory as opposed to prohibitory; or (3) if the preliminary injunction affords the movant substantially all the relief he may recover at the conclusion of a full trial on the merits.

In an *en banc* opinion filed a few days ago, the Tenth Circuit revisited the <u>SCFC</u> holding and clarified the rules regarding disfavored categories of preliminary injunctions.  The court was divided over the outcome of that case, but a majority of the court "voted to maintain a heightened standard for granting any of the three historically disfavored preliminary injunctions." <u>O Centro</u>, *supra*, at *1. Furthermore, movants seeking a "disfavored" preliminary injunction "are not entitled to rely on this Circuit's modified-likelihood-of-success-on-the-merits standard." <u>Id</u>.

As noted above, the Court determines that a brief discussion of the <u>O Centro</u> decision, as pertinent to the issues herein, will clarify the earlier ruling in this case.  The Court finds that the preliminary injunction sought by BP does not, under the circumstances of this case, come within the disfavored categories and the earlier ruling enjoining the Kysars is confirmed.

           1.  <u>Alteration of the Status Quo</u>

As to the first category, this preliminary injunction is not one which alters the status quo.  To the contrary, the Court finds that the injunctive relief sought herein is intended to preserve the status quo as it existed at the time the litigation was commenced, in order "to prevent the judicial process from being rendered futile by the [Kysars'] action."  Construction on the Sullivan E-1 well was completed in 1992.  BP used the roads in question to access the well for seven and a half to eight years before the Kysars filed their complaint on May 26, 2000.  BP continued to use the roads for access to the Sullivan well for four more years, until August 2004 when the Kysars posted no-trespassing signs on the road leading to the well, apparently as a result of the supreme court decision.

Although the Kysars included in their complaint a request for relief in the form of a permanent "injunction against further trespass" by BP, they have never asked the Court for a preliminary injunction in this case.  In any event, such a request would have been denied had it been sought, as

the Kysars cannot demonstrate that either their land or their right of exclusive possession have been irreparably or permanently harmed by BP's use of the roads over the past 12 years. Instead of asking for a preliminary injunction, the Kysars simply took matters into their own hands and, on the strength of preliminary rulings which resolved some but not all of the issues in this case, they physically barred BP's right of access even while legal issues remain pending between the parties. It is the Kysars who have altered the status quo, and this preliminary injunction will restore it *pendente lite*.

The Court finds that the relevant "status quo" under these circumstances is that existing before the Kysars took their unilateral action in posting signs and barring BP's access. The Kysars will not "incu[r] significant costs as a result of abiding by" the preliminary relief sought by BP. <u>O Centro</u>, *supra*, at *4. This is, therefore, not a case in which the requested preliminary injunction would alter the relevant status quo.

### 2. Mandatory vs. Prohibitory Injunction

Secondly, the Court finds that the rationale underlying the "mandatory" injunction category does not, under the circumstances of this case, require BP to make a heightened showing. "The manner by which a court considers the factors, the relative weight given to each, and the standards by which a movant is required to prove them, are driven by the special and unique circumstances of any given case." <u>O Centro</u>, *supra*, at *20 (Seymour, J., concurring in part and dissenting in part).

The reason for disfavoring mandatory injunctions is "because they affirmatively require the nonmovant to act in a particular way, and as a result they place the issuing court in a position where it may have to provide ongoing supervision to assure the nonmovant is abiding by the injunction." <u>SCFC</u>, *supra*, at 1099, *quoted in* <u>O Centro</u>, *supra*, at *5.

Although the preliminary injunction sought in this case would require the Kysars to remove

the posted signs and permit BP to use the roads in question, this is not the sort of directive which will require ongoing judicial oversight such as an injunction requiring a city to construct a sewer system, or one requiring a state to cease enforcement of a statute permitting racially segregated schools, or one requiring a prison system to institute particular methods of operation.  *See, e.g.,* Mayor of Vicksburg v. Vicksburg Waterworks Co., 202 U.S. 453, 26 S. Ct. 660 (1906); Brown v. Board of Education, 347 U.S. 483, 74 S. Ct. 686 (1954); Duran v. Anaya, 642 F. Supp. 510 (D.N.M. 1986).

The Court finds that this factor does not require BP to make a heightened showing in order to obtain the preliminary injunctive relief, under the circumstances of this case.

### 3.  Affording Movant All Relief it Could Recover at Trial on the Merits

Finally, issuance of the preliminary injunction sought by BP will not afford it "substantially all the relief [it] may recover at the conclusion of a full trial on the merits."  SCFC, *supra*, at 1099.

BP requests only that it be allowed to use the roads in question pending resolution of this litigation so that, *inter alia*, its well will not be permanently physically damaged.  Although the injunction will allow BP to continue temporary use of the roads without payment to the Kysars, the Kysars will eventually be compensated, if they prevail, for this use.  Therefore, the injunctive relief requested herein does not fall within this "disfavored" category, and no heightened showing is necessary on this ground.

The Court now turns to the four-part test for determining if a preliminary injunction should issue, applying the "modified requirement" as to whether BP is  likely to prevail on the merits.

### B.  Irreparable Harm

BP asserts that it will suffer irreparable harm if the preliminary injunction does not issue, because the roads in question provide the only practical access to the Sullivan E-1 well site.  BP

asserts that it must have access to the well's surface location in order to check its mechanical integrity and ensure its safe operation, to the end that the well continues to be productive and that environmental risks are regularly monitored.

BP asserts that, by preventing monitoring and maintenance, the Kysars create an unnecessary risk that a public nuisance will result, exposing both BP and the Kysars themselves to liability. In addition, BP has financial interests in the well, as do the royalty owners, which it claims will be harmed if the well does not continue to operate. In addition, unless the well maintains production, BP says it will not be able to pay its tax and royalty obligations, the underground gas reserves may be permanently depleted by drainage from other wells, and BP will be forced to breach obligations under its current agreements, including the communitization agreement, and under state and federal regulations. "A threat to trade or business viability may constitute irreparable harm." Tri-State Generation, *supra*, at 356.

In support of its assertions, BP submits the affidavit of Jim L. Bertramson, an Operating Center Manager for BP, responsible for the Sullivan E-1 well. He states that part of his job is to ensure that the well is producing, that the well and associated equipment are operating properly, that no leaks are present in the pipes, and that byproducts of the well's production are being properly contained. Frequent inspections are necessary in order to carry out these responsibilities, he says, and the Kysars' actions in blocking access to the site are preventing him from doing his job. He states also that if the well ceases operations even temporarily, the underlying gas formation would be drained by other nearby wells and water would then accumulate in the wellbore. This situation could result in permanent damage to the well and cause it to fail altogether. [Doc. 73, Ex. A].

The Kysars argue in response that BP has unclean hands and is not entitled to injunctive relief

because any injuries that occur, irreparable or not, "are entirely self-inflicted."  They point out that

BP could have gained access to well by accepting one of the Kysars' offers – either the $5,000 offer

to keep the well temporarily up and running, or the $5.00 offer to go in and shut the well down

completely.  This argument is not sufficient to meet BP's assertions of irreparable harm.

In light of the fact the Kysars do not contest any of BP's factual assertions regarding the

physical, financial, and legal harm that could result if it is not allowed to access the well for

inspection, maintenance and production, the Court finds that BP has established that irreparable harm

will occur if a preliminary injunction does not issue.

C. <u>Balancing the Interests of the Parties</u>

Next, the Court must determine whether the threatened injury outweighs any harm the

preliminary injunction may cause the opposing party.  BP's interest, outlined above, is to be balanced

against the interest the Kysars seek to protect in this trespass action – that is, is their "right to

exclusive possession, sometimes called the right to exclude others."  [Doc. 77, at 5-6].

If in fact the Kysars are being wrongfully denied their right to exclusive possession of their

roads, and if the statute of limitations has not run on their claims, they will be fully compensated in

damages when this litigation ends.  In the meantime, they have not demonstrated that their roads are

being physically harmed by BP's continued use; indeed, they do not dispute BP's assertion that it

grades and maintains the roads for the benefit of the parties.  In addition, BP and others have a legal

right to use the roads for access to other wells on the Kysars' property, and it is therefore apparent

that those roads will continue to be utilized whatever the outcome of this litigation.

Issuance of a preliminary injunction will simply maintain the status quo as it existed prior to

institution of the lawsuit and will not permanently harm the Kysars.  Any injury to the Kysars "is

neither exceptional nor uncompensable with a money award." <u>Tri-State Generation</u>, *supra*, at 357. The Court finds that the balance of hardships weighs in favor of granting the injunction.

D.  <u>The Public Interest</u>

The court must next determine whether an injunction, if issued, would adversely affect the public interest.  BP argues that it would actually serve the public interest to allow it continued access to the well in order to maintain continued production, with the concomitant benefit of protection of stakeholders' interests and continued tax revenue to government.  In addition, maintaining unfettered access to the well site will enable BP to conduct regular inspections for leaks and other environmental problems and will reduce the possibility of an environmental accident.

The Kysars do not claim that environmental and safety risks are not a factor in this situation. They argue instead that BP is being hypocritical in raising these concerns, because it "refused to spend $5" to eliminate the risks – that it, it refused to accept the Kysars' offer of one-time access for the purpose of shutting down the well in exchange for payment of $5 to the Kysars.  "If BP were genuinely concerned about safety and environmental risks," the Kysars argue, "it could have eliminated the problem by accepting either of Kysars' offers."   The Court finds this argument unpersuasive.  BP presumably spent more than $5.00 when it sent its employees across the river by means of ropes and harnesses in order to temporarily alleviate problems at the well site.  In light of the potentially dangerous situation, the Court cannot say that BP is acting irresponsibly.

The Court agrees with the Kysars that there is a public interest in protecting private property rights, including their right to exclude others.  They claim that BP, in seeking a preliminary injunction, is asking the Court to "transfer some of the Kysars' property rights to it, without compensation, for its private use."  [Doc. 77, at 19].  This is not what BP is asking; rather, the company seeks only the

right to continue using the Kysars' roads as a means of continuing the well's operation, pending a final determination of the parties' respective rights and obligations in this situation. As noted above, if the Kysars prevail they will be compensated for any harm inflicted on their right of exclusive possession. Issuance of a preliminary injunction will not, contrary to their argument, "allo[w] the destruction of the Kysars' constitutionally protected right to exclude others."

The Court finds that the "public interest" element weighs in favor of issuing the requested preliminary injunctive relief.

E. Likelihood of Prevailing on the Merits

Finally, BP must show that it is likely to prevail on the merits. "To justify a temporary injunction it is not necessary that the plaintiff's right to a final decision, after a trial, be absolutely certain, wholly without doubt." Continental Oil Co. v. Frontier Refining Co., 338 F.2d 780, 781 (10th Cir. 1964).

As noted above, where the moving party has met its burden of showing irreparable harm, that the threatened injury outweighs any burden on the opposing party, and that an injunction would not be detrimental to the public interest, a "modified requirement" standard will be applied to the question of likelihood of prevailing on the merits. Such a standard is appropriate in this case, as BP has made the requisite three-part showing, and furthermore this is not a case that falls within the "disfavored" categories of injunctive relief. The Court finds that there are "serious, substantial, difficult, or doubtful" issues which remain to be resolved.

The Kysars implicitly acknowledge as much in their suggestion that certain issues may again have to be certified to the New Mexico Supreme Court; *see*, Doc. 77, at 20: "If there are any questions about BP's claims regarding estoppel and/or the statute of limitations, the Kysars request

13

that such questions should be certified to the New Mexico Supreme Court . . . ."  It is true that the Kysars' arguments have thus far prevailed to the extent they have secured a ruling from the Tenth Circuit, on issues certified to the New Mexico Supreme Court, that BP does not have a legal right to use roads across any portion of their property not falling within the communitization area. However, that ruling does not end this litigation.

The Tenth Circuit's mandate to this Court was not to enter judgment in favor of the Kysars. Rather, that court remanded the case "for further proceedings, including the consideration of the statutes of limitations for the trespass and unjust enrichment claims," based on the following considerations:

> As to the Kysars' claims for trespass and unjust enrichment, Amoco argues that these claims are barred by the four-year statute of limitations for each claim.  We hold that there are unresolved factual issues which prevent our resolving the statute of limitations issue, and we remand to the district court to make these determinations.  In closing, we also note that any calculation of damages (as well as the determination of whether the tort or contract claims lie at all) in this case must take into account the Kysars' request and Amoco's agreement not to locate the well on the Kysars' alfalfa field, but rather to use existing roads to other wells as far as possible.

Kysar v. Amoco Production Co., 379 F.3d 1150, 1157 (10th Cir. 2004).

As noted above, the Kysars' suit is one for trespass.  [Complaint, Ex. A to Doc. 1].  Although the law of trespass "lie[s] along the boundary between property law and tort law,"[2] it is clear that plaintiffs herein have brought an action for trespass to real property, a claim which sounds in tort. Townsend v. State ex rel. State Highway Dep't, 117 N.M. 302, 303, 871 P.2d 958, 959 (1994).  The action is one *in personam* and not *in rem*.  Pacheco v. Martinez, 97 N.M. 37, 41, 636 P.2d 308, 312

---

[2]Roger A. Cunningham, et al., The Law of Property 414 (2d ed. 1993).

(Ct. App. 1981); *see also*; N.M.S.A. 1978 § 38-3-1 (venue statute, providing that a lawsuit must be brought in the county where the land is situate when lands or any interest in lands are the object of any suit, but suits for trespass on land may alternatively be brought as provided in Subsection A for transitory actions). The gist of the action is an alleged injury to the right of possession, and the remedy for trespass is in damages. Id.

BP asserts the statute of limitations set forth in N.M.S.A. 1978 § 37-1-4, as an affirmative defense. That section sets up a four-year limitation period for suits "founded upon accounts and unwritten contracts, those brought for injuries to property or for the conversion of personal property or for relief upon the grounds of fraud, and all other actions not herein otherwise provided for and specified . . . ."

BP argues that the Kysars were aware as early as November 21, 1991 that BP intended to drill the well on BLM land adjacent to their property, and that this is the date the statute of limitations began to run. At the very least, they argue, the Kysars knew of the existence of their causes of action since 1992 when the well was completed and the Kysars began to object to BP's access over the roads in question. The complaint was not filed until on May 26, 2000, well after the four-year limitation period established in § 37-1-4.

While it is true that the parties entered into a tolling agreement in September 1999, they agreed that execution of that agreement would not waive any already-existing defenses, and that "Nothing in this Agreement modifies or otherwise alters any time bar existing prior to August 15, 1999 . . . [but rather] [t]he parties reserve all rights, privileges, defenses, and contentions existing as of August 15, 1999 as against each other." [Ex. 6 to Doc. 73]. Thus, the tolling agreement will not prevent application of the four-year limitation period, if that period is ultimately found to be

applicable.

The Kysars contend, however, that § 37-1-4 is not the appropriate statute of limitations in this case. They point instead to N.M.S.A. 1978 § 37-1-22, which sets up a ten-year period for adverse possession. This ten-year period applies as well to prescriptive easements. Hester v. Sawyer, 41 N.M. 497, 71 P.2d 646, 650 (1937). The statute provides that a person shall be forever barred from bringing suit if he fails for a term of ten years to avail himself of the benefit of any legal or equitable title which he may have to any land within the state, by means of suit at law or equity against the adverse possessor.

The Kysars rely on this statute, arguing that BP cannot obtain an easement by prescription unless it has been in open, notorious and adverse use of the land for an uninterrupted period of ten years. They contend that BP "tries to stretch the 4 year statute by mischaracterizing trespass as a claim for injury to property," but, they argue, their claim is one for invasion of their right to exclusive possession, not for injury to their property. The Court is not persuaded by this argument. The Kysars clearly allege an injury to property in their complaint, and they seek damages for such alleged injury:

> By its wrongful trespass and misuse of the Kysars' land, Amoco has unjustly enriched itself. Amoco should be required to disgorge its unjust enrichment. Amoco has also damaged the Kysars' property and injured the Kysars' rights as landowners, and therefore should pay compensation and damages to the Kysars, including but not limited to the fair value of the wrongful right-of-way, repair costs, and the diminished value of the Kysars' property.

[Complaint, at ¶ 8].

In citing the adverse possession / prescriptive easement statute of limitations, the Kysars seem to be casting their complaint as one to quiet title. But they did not bring a quiet title action, and BP

16

does not claim a right in this lawsuit to an easement by prescription.  BP's resistance to the Kysars'

claims has been based on the assumption that it had a legal right to use the roads in question, based

on its lease, on the communitization agreement, or on operation of law.  Although the rulings by the

New Mexico Supreme Court and the Tenth Circuit now reveal those assumptions to have been

incorrect, those rulings do not change the case into a suit over title.  The Kysars brought this case as

a tort action, and the Court concludes that the case must therefore be governed by the statute of

limitations applicable to such actions, N.M.S.A. 1978 § 37-1-4.  This conclusion does not resolve the

limitations issue, however.  Issues both factual and legal remain to be decided, including the date of

accrual of the limitations period and possible application of the doctrine of continuing trespass.

As noted above, BP claims the Kysars were aware of their rights as early as November 1991

when they received a letter from BP declaring its intention to drill a well on adjacent BLM land, and

that their statute of  limitations began to run on that date.  The Court has not been given a copy of

this letter.  In addition, it is not clear when BP began using the roads in question, when, how  and by

whom the spur from the "back gate" road onto the  BLM land was built, nor when the Kysars advised

BP they were not welcome to use roads across its lands for access to the particular well at issue in

this litigation.

Furthermore, the Kysars allege in their complaint that they were deceived and misled by BP's

false representations to the effect that BP had a legal conveyance of the right to cross the Kysars' land

to reach the well.  [Complaint, at ¶¶ 6-7].  Although the Kysars made these allegations in support of

their claims under the Unfair Practices Act, which claims have been dismissed from the suit, these

factual allegations may nevertheless bear on the accrual date of the limitations period.  The right to

sue for injuries to property does not accrue until the injury is discovered.  Mayer v. Lane, 33 N.M.

18, 262 P. 178 (1927).  The Court cannot determine, on the current record, when the Kysars discovered they had a right to exclude BP from using their land to access the well and whether, in fact, BP fraudulently concealed that right.  *See*, Tiberi v. Cigna Corp., 89 F.3d 1423, 1430-31 (10th Cir. 1996):

> Under the continuing wrong doctrine, however, where a tort involves a continuing and repeated injury, the cause of action accrues at, and limitations begins to run from, the date of the last injury . . . .  In other words, the statute of limitations does not begin to run until the wrong is over and done with.  [Internal punctuation omitted].

The Tenth Circuit found in Tiberi that "New Mexico recognizes the doctrine" of continuing wrong in tort cases.

This case also raises issues of continuing trespass, similar to but distinct from the "continuing wrong" concept.  The Kysars cite Valdez v. Mountain Bell Telephone Co., 107 N.M. 236, 755 P.2d 80 (Ct. App. 1988), in arguing that they sustain new injury each time BP trespasses on the roads, and the trespass therefore constitutes a continuing injury, triggering a new limitations period each time the roads are used to access the Sullivan E-1 well.  Valdez involved a nuisance rather than a trespass, but the analysis nevertheless applies in this case.  The court in Valdez distinguished situations where the construction and continuation of the nuisance is "not necessarily injurious, but may or may not be so" – in which case "each new injury allows a new cause of action to accrue" – from those situations in which the construction and continuance of the nuisance is itself "necessarily an injury" – in which case damage to plaintiff's property can be reasonably calculated at the time of the completion of the construction of the nuisance.

BP argues that the Kysars' claims are based on facts which are "definite, [and] have been discoverable since 1992, and nothing prevented the Plaintiffs from coming forward with this suit

within the limitations period."  In addition, BP asserts, damages in this case would be calculated by the difference in value of Plaintiffs' property with and without the access easement, which is a fixed value.  [Doc. 73, at 11].  The Kysars, on the other hand, argue that they sustain a new injury each time BP uses their roads to access the Sullivan E-1 well.

The Court is inclined to agree with BP.  It appears that the damages for which the Kysars seek compensation can be definitely calculated by taking account any diminishment in the value of their land due to BP's use of the roads to access the Sullivan E-1 well, a figure which does not fluctuate each time BP comes onto the roads to access this particular well.  The Court does not decide the issue at this time, however, but holds only that BP has met its burden of pointing out "serious, substantial, difficult, or doubtful" issues, some of which require further factual development in order to resolve.

There exist as well outstanding factual disputes with respect to other aspects of this case, including the effect, if any, of the Gathering Line Agreement on the rights and duties of the respective parties, and the question of whether or not Plaintiffs, as BP contends, caused the trespass by insisting that BP locate the well on BLM land, or are estopped because they told BP to use existing roads as far as possible.

In the meantime it is prudent to maintain the status quo, especially in light of the strong showing of potential harm due to the presence on the land of an operating, but unattended, gas well.  The burden to the Kysars in allowing BP to access the Sullivan E-1 well pending resolution of this litigation appears minimal, as BP and others use most of the length of these roads for access to other wells, a situation which will not be affected one way or the other by this litigation.

The Court notes that, even if the limitations issue is resolved in favor of BP and this suit for

trespass is dismissed, that will not finally resolve the differences between these parties. The Kysars may have waited too long to press their tort claim for trespass, but they may well have other legal and equitable remedies. BP may have legal or equitable remedies of its own, as well. New suits can be filed, appeals can be taken, questions can be certified to the state courts, and new requests for injunctive relief can be filed. Contentious litigation and the inevitable attorney fees and costs of litigation are in no one's best interests.

There is an outstanding judicial determination that BP does not have the legal right to use the Kysars' roads for access to the Sullivan E-1 well, and a statement by the state supreme court that "[i]f Amoco is to use those roads, the parties must negotiate an agreement to do so." Kysar v. Amoco Production Co., *supra*, 93 P.3d at 1285. It is just as clear that BP does have the right to use those same roads, for most of their length, to access other wells on the Kysars' property.

In posting no-trespassing signs and demanding payment – even nominal payment – from BP for access to the Sullivan E-1 well site, the Kysars have made their point. The Court now orders them to provide access until the remaining issues in this case have been resolved, as it is in the public interest to keep the well operating safely until such resolution occurs.

These circumstances make the dispute ripe for settlement. The Court suggests that the parties sit down and make a renewed and sincere effort to negotiate an agreement under which the Kysars may be compensated for BP's use of the spur from the Kysars' road to the BLM land upon which the Sullivan E-1 well sits. In doing so, they should bear in mind the New Mexico Supreme Court's statement regarding a negotiated settlement, as well as the Tenth Circuit's admonition to "take into account the Kysars' request and Amoco's agreement not to locate the well on the Kysars' alfalfa field."

In the meantime, a preliminary injunction will issue.  The Court will not require BP to give security for issuance of the preliminary injunction under Fed. R. Civ. P. 65(c), in light of BP's uncontested representation that it grades and maintains the roads in question for the benefit of itself and the Kysars and the fact that the roads, for most of their length, have been and will continue to be used by BP and others regardless of the outcome of this litigation.

### Order and Preliminary Injunction

IT IS THEREFORE ORDERED that Defendant BP America Production Company's Motion for  Preliminary Injunction [Doc. 72] is granted.  The Plaintiffs, and all persons acting under their direction and control, are hereby preliminarily enjoined from preventing Defendant BP America's access to the Sullivan Gas Com E-1 Well over roads located on Plaintiffs' ranches.

IT IS FURTHER ORDERED that Defendant need not post security under Fed. R. Civ. P. 65(c).

IT IS FURTHER ORDERED that this preliminary injunction will remain in effect until final judgment is entered in this case, or until further order of this court, whichever comes sooner.


_Lorenzo F. Garcia_
Lorenzo F. Garcia
Chief United States Magistrate Judge